SKOPIL, Circuit Judge:
 

 This appeal is from a decision of the Bankruptcy Appellate Panel affirming the Bankruptcy Court’s confirmation of a debt- or’s chapter 13 plan. Appellant Downey Savings and Loan Association (“Downey”) argues that appellee debtor Metz’s successive filing of chapter 7 and chapter 13 petitions constitutes bad faith. Alternatively, Downey argues that if the chapter 13 plan was not filed in bad faith, the plan is nevertheless deficient because it under-compensates Downey for its secured interest. We reject Downey’s contentions and affirm.
 

 FACTS AND PROCEEDINGS BELOW
 

 In 1984 Metz filed a chapter 7 bankruptcy petition listing both secured and unsecured creditors. The list of debts included Downey’s secured interest in Metz’s home and a series of judgment liens recorded against the property. The chapter 7 proceeding resulted in the total discharge of Metz’s debts. There was no distribution to any creditors. All judgment liens were extinguished. Downey’s interest was reduced to a secured lien against the property. Delinquent property taxes remained due against the value of the property but not as an obligation against Metz.
 

 On the same day Metz received his chapter 7 discharge, he filed a proposed chapter 13 plan that sought to cure his delinquent mortgage payments to Downey and thereby avoid foreclosure on his home. None of the unsecured creditors or judgment lien holders whose respective debts and liens had been discharged by the chapter 7 proceedings were included in the proposed chapter 13 plan. The plan made no provision for payment of a market rate of interest on the mortgage arrearages. The plan also failed to include any provision for payment of the delinquent property taxes. The bankruptcy court dismissed Metz's chapter 13 plan without prejudice to refiling.
 

 Downey thereafter continued foreclosure proceedings against the property. Only Metz’s submission of a revised chapter 13 plan prevented Downey from completing a foreclosure sale. Metz's revised plan called for repayment of arrears to Downey over a thirty-six month period with interest on the arrears at market rate, continued mortgage payments at the contract rate, and payment of delinquent property taxes over the first six months of the plan. Again, no provision was made for the unsecured debts discharged by the chapter 7 proceeding.
 

 Downey objected to Metz’s second chapter 13 plan on the ground that it was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) (1982). Downey contended, inter alia, that (1) a “zero percent” repayment plan to unsecured creditors is
 
 *1497
 
 unlawful; (2) consecutive chapter 7 and chapter 13 filings constitute bad faith per se; and (3) the prior discharge of Metz’s debt left Downey with a vested property right under state law that entitles Downey to the “indubitable equivalent” of the right taken by de-acceleration of the mortgage. Over those objections, the bankruptcy judge approved Metz’s chapter 13 plan. A divided Bankruptcy Appellate Panel for the Ninth Circuit (BAP) affirmed.
 
 In re Metz,
 
 67 B.R. 462 (9th Cir. BAP 1986).
 

 DISCUSSION
 

 Our review of the bankruptcy judge’s confirmation of Metz’s chapter 13 plan is the same as the review by the BAP.
 
 See In re Mellor,
 
 734 F.2d 1396, 1399 (9th Cir.1984). A bankruptcy judge’s finding that a debtor’s plan is proposed in good faith is a finding of fact reviewed under the clearly erroneous standard.
 
 See In re Baker,
 
 736 F.2d 481, 482 (8th Cir.1984) (debtor’s intentions in filing chapter 13 plan is a question of fact for the bankruptcy court);
 
 Public Finance Corp. v. Freeman,
 
 712 F.2d 219, 221 (5th Cir.1983) (reasonableness of plan is reviewed under the clearly erroneous standard);
 
 In re Slade,
 
 15 B.R. 910, 911 (9th Cir. BAP 1981) (whether debtor’s chapter 13 plan is proposed in good faith is a question of fact reviewed under the clearly erroneous standard).
 

 A. Good Faith Filings
 

 Metz’s successive filing of bankruptcy petitions does not constitute bad faith per se.
 
 See, e.g., Baker,
 
 736 F.2d at 482 (prior chapter 7 filing is not an automatic bar to a chapter 13 filing);
 
 In re Gayton,,
 
 61 B.R. 612, 614 (9th Cir. BAP 1986) (chapter 7 discharge followed by chapter 13 plan does not constitute bad faith per se);
 
 In re Beauty,
 
 42 B.R. 655, 657 (E.D.La.1984) (successive filings alone do not constitute bad faith),
 
 appeal dismissed,
 
 745 F.2d 53 (5th Cir.1984) (table). Nevertheless, we agree with Downey that Metz’s successive filings may be examined together and the result achieved by such filings reviewed against the statutory re-quirements.
 
 See Neufeld v. Freeman,
 
 794 F.2d 149, 153 (4th Cir.1986) (successive filings can be evidence of bad faith);
 
 In re Diego,
 
 6 B.R. 468, 469 (Bkrtcy.N.D.Cal.1980) (filings must be considered together).
 

 Chapter 13 allows a mortgagor debtor to cure a prepetition acceleration of home mortgage debt triggered by default.
 
 Grubbs v. Houston First Am. Sav. Ass’n,
 
 730 F.2d 236, 237 (5th Cir.1984) (en banc). Although a debtor cannot “modify” (e.g., change the length of the contract or amount of the balance or balloon payment) a claim secured only by the debtor’s principal residence, courts have uniformly held that 11 U.S.C. § 1322(b)(2) (1984 Supp.) allows the debtor to “cure” (i.e., pay or bring current) arrearages on the debt and thereby reinstate the debt.
 
 See, e.g., In re Glenn,
 
 760 F.2d 1428, 1435 (6th Cir.1985) (statutory right to cure default on mortgage can be exercised until time of foreclosure sale);
 
 In re Clark,
 
 738 F.2d 869, 874 (7th Cir.1984) (power to cure default allows debtor to de-accelerate payment under a note secured by residential property). Thus, while modification of the debt is prohibited, Metz’s chapter 13 plan is a permissible “cure” of a claim because it simply reinstates the original debt after correcting the arrearages.
 
 See In re Seidel,
 
 752 F.2d 1382, 1386 (9th Cir.1985) (cure results in reinstatement of the original payment terms of the debt).
 

 Downey argues, however, that Metz’s chapter 13 plan involuntarily treated Dow-ney as a creditor even though Metz’s obligation to pay Downey was discharged in the prior chapter 7 proceeding. Bankruptcy decisions are not uniform in their treatment of a debtor’s proposed cure of a mortgage default following discharge in chapter 7. One view appears to be that, “a chapter 13 debtor cannot cure such a default when the underlying obligation secured by the mortgage has been discharged in a previous chapter 7 case.”
 
 In re Lagasse,
 
 66 B.R. 41, 43 (Bkrtcy.D.Conn.1986).
 
 See also In re Reyes,
 
 59 B.R. 301, 302 (Bkrtcy.S.D.Cal.1986) (chapter 13 cannot compel reaffirmation of a debt that was discharged under chapter 7);
 
 In re McKinstry,
 
 56 B.R. 191,
 
 *1498
 
 192 (Bkrtcy D.Vt.1986) (“debtor may not unilaterally reaffirm a discharged debt by scheduling the creditor in a proposed Chapter 13 Plan”);
 
 In re Brown,
 
 52 B.R. 6, 6 (Bkrtcy.S.D.Ohio 1985) (chapter 13 plan filed after chapter 7 discharge cannot compel mortgagee to accept the cure of arrear-ages on a defaulted mortgage).
 
 Lagasse,
 
 however, rejected that view by reasoning that when a debtor receives a chapter 7 discharge of a secured debt, the debt relationship between the debtor and the secured party is transformed into a nonre-course obligation.
 
 Lagasse,
 
 66 B.R. at 43. Thus,
 
 Lagasse
 
 holds that “chapter 13 debtors are not barred, as a matter of law, from including in a plan treatment of a mortgage claim where the underlying obligation of the mortgage had been discharged in the debtors’ prior bankruptcy case.”
 
 Id.
 

 Similarly, in
 
 In re Lewis,
 
 63 B.R. 90, 90 (Bkrtcy.E.D.Pa.1986), the court held that even though a debtor’s personal liability on a home mortgage has been discharged, the debtor may propose a confirmable plan under chapter 13 to satisfy arrearages. The court noted that under chapter 13, a creditor’s “claim” includes not only a right to payment but also the right to an equitable remedy for breach of performance.
 
 Id.
 
 at 91. Therefore, “a claim may include a creditor’s encumbrance against property of the estate although there is no in personam liability against the debtor.”
 
 Id.
 
 at 92.
 

 We agree that a chapter 13 petitioner may include a mortgage claim within a plan even though the underlying obligation of the mortgage was discharged in the debtors’ prior bankruptcy case. We find no statutory prohibition to such a practice except the good faith filing requirement of section 1325(a)(3). Thus, although a chapter 13 plan may, as a matter of law, cure arrearages on a mortgage debt discharged by chapter 7, the plan may nevertheless violate the purpose and spirit of chapter 13 and thus not be submitted in good faith.
 
 See, e.g., Beauty,
 
 42 B.R. at 657 (submission of chapter 13 plan with ostensible purpose of restructuring non-dis-chargeable debts from earlier chapter 7
 

 case is contrary to the purpose of chapter 13 and thus not in good faith);
 
 In re Sanchez,
 
 20 B.R. 431, 433 (Bkrtcy.W.D.Tex.1982) (chapter 13 plan intended to evade payment of unsecured debts discharged by chapter 7 is abuse of bankruptcy laws);
 
 In re Sardella,
 
 8 B.R. 401, 403 (Bkrtcy.S.D.Ohio 1981) (chapter 13 plan by debtors to adjust debts which survived chapter 7 transgresses the good faith requirement).
 

 To judge the good faith of Metz’s filings, we apply a “totality of the circumstances” test.
 
 In re Goeb,
 
 675 F.2d 1386, 1391 (9th Cir.1982). The BAP found Metz’s circumstances justified the bankruptcy court’s confirmation of the second chapter 13 plan.
 
 Metz,
 
 67 B.R. at 466. Metz proposed to pay the arrears to Downey over thirty-six months at a market rate of 12%. He had shown good faith by keeping the payments on his house current. His increased salary made it possible for the first time in the bankruptcy proceedings to propose such a cure. Such a bona fide change in circumstances is precisely what the bankruptcy judge should examine to determine whether successive filings are proper.
 
 See In re Johnson,
 
 708 F.2d 865, 868 (2d Cir.1983).
 

 The fact that Metz’s plan provides for no payment to unsecured creditors is not sufficient to conclude that the plan was submitted in bad faith.
 
 See, e.g., Flygare v. Boulden,
 
 709 F.2d 1344, 1348 (10th Cir.1983) (no per se minimum payment requirement);
 
 In re Gregory,
 
 705 F.2d 1118, 1121 (9th Cir.1983) (noting in dictum that zero-payment plan to unsecured creditors may be proposed in good faith);
 
 Barnes v. Whelan,
 
 689 F.2d 193, 198 (D.C.Cir.1982) (chapter 13 requires no minimum repayment as a prerequisite to confirmation);
 
 In re Greer,
 
 60 B.R. 547, 554 (Bankrtcy.C.D.Cal.1986) (zero-payments to unsecured creditors is not evidence of bad faith per se).
 
 But see In re Lattimore,
 
 69 B.R. 622, 625 (Bkrtcy.E.D.Tenn.1987) (“a plan proposing zero payment for unsecured claims is an abuse of the purpose and spirit of Chapter 13”);
 
 In re Heywood,
 
 39 B.R. 910, 911 (Bkrtcy.W.D.N.Y.1984) (chapter 13 plan listing only secured debts remaining after chapter 7
 
 *1499
 
 discharge with no provisions for payments to discharged unsecured creditors is not submitted in good faith). Congress directed in 11 U.S.C. § 1325(a)(4) that the amount to be paid on unsecured claims in a chapter 13 plan need be only as much as the unsecured creditors would have received under chapter 7.
 
 See Goeb,
 
 675 F.2d at 1389 (if a minimum payment to unsecured creditors is required, it should be mandated by Congress and not the courts). The law requires that all of a debtor’s projected disposable income be applied to make payments under a chapter 13 plan. 11 U.S.C. § 1325(b)(1)(B) (1984 Supp.);
 
 see also Lewis,
 
 63 B.R. at 93 n. 2 (section 1325(b)(1)(B) overrules prior cases holding that chapter 13 plans are filed in bad faith when debtor proposes “zero payments”). Metz satisfies the requirement of section 1325(b)(1)(B) in that all of his disposal income is allocated to the chapter 13 plan. The bankruptcy court’s finding of good faith is not clearly erroneous.
 

 B. Undercompensation to Downey
 

 Downey argues that under state law it properly accelerated the mortgage and declared due the entire balance prior to Metz’s bankruptcy filings and is thus entitled to receive a market rate of interest on the total balance and not just on the arrear-ages. In
 
 In re Nelson,
 
 59 B.R. 417, 418 (9th Cir. BAP 1985), the court rejected a creditor’s argument that federal bankruptcy law could not modify a creditor's “absolute and matured right” under state law to accelerate and foreclose on its secured property. “Where the language of Congress indicates a policy requiring a result not reached under state law, the Supremacy Clause does not permit state law to interfere with the intended result.”
 
 Id.
 
 (citing
 
 Perez v. Campbell,
 
 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971)). We agree with
 
 Nelson
 
 that Congress intended the bankruptcy code to permit debtors to “rescue the benefit of their respective bargains” and to reinstate “the underlying expectations of the parties.”
 
 Id.
 
 at 419. Under that theory, Downey is not entitled to either immediate full payment or to a modified rate of interest on the balance.
 
 See Clark,
 
 738 F.2d at 874 (permitting cure and reinstatement of home mortgage even after state court had entered judgment of foreclosure).
 

 Downey’s reliance on
 
 In re American Mariner Industries, Inc.,
 
 734 F.2d 426 (9th Cir.1984), is misplaced. Our focus there on chapter ll’s “indubitable equivalent” protection to creditors makes
 
 American Mariner
 
 inapplicable to Metz’s chapter 13 proceeding. We agree with the BAP that Congress apparently chose not to provide that same protection to chapter 13 creditors.
 
 See Metz,
 
 67 B.R. at 467.
 

 AFFIRMED.