**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

MAR 27 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONALD F. MARTINEZ, | No.    22-16750 |
| Plaintiff-Appellant, | D.C. No. 1:19-cv-01459-ADA-CDB |
| v. | |
| D. BAUGHMAN, Associate Director CDCR at CDCR Headquarters in Sacramento; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Ana de Alba, District Judge, Presiding

Submitted March 27, 2024**
San Francisco, California

Before:  FRIEDLAND, SANCHEZ, and H.A. THOMAS, Circuit Judges.

Ronald F. Martinez appeals the dismissal of his case with prejudice, which

the district court entered after concluding that Martinez made misrepresentations

on his application to proceed in forma pauperis ("IFP").  We have jurisdiction

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

under 28 U.S.C. § 1291, and we affirm.

Granting or denying IFP status is discretionary. *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (reviewing denial of an IFP application for abuse of discretion). To facilitate the informed exercise of the court's discretion, a prisoner seeking to proceed IFP must submit an affidavit stating that she or he "is unable to pay" the required fees, along with "a certified copy of the trust fund account statement" from the prison where she or he is incarcerated. 28 U.S.C. § 1915(a)(1)-(2). A prisoner granted IFP status must still "pay the full amount of a filing fee" in monthly installments. *Id.* § 1915(b). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" "the allegation of poverty is untrue." *Id.* § 1915(e)(2)(A). That "sanction[]" serves to "protect against false affidavits." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 338 (1948). Before dismissing a case, "a showing of bad faith is required, not merely inaccuracy." *Escobedo*, 787 F.3d at 1234 n.8.

Martinez sued the California Department of Corrections and Rehabilitation and several of its employees ("Defendants"). He applied for IFP status and stated on his application that he had received no money from any sources over the prior twelve months and that he had no assets. He also filed a trust fund account statement, which showed a deposit of more than seven thousand dollars a few

2

months earlier, with a source of "STLMNT CK," and a similar amount voluntarily withdrawn from the account shortly thereafter.

A magistrate judge granted the IFP application, stating that Martinez had "made the showing required," and ordered that he pay the $350 filing fee in monthly installments.

Defendants moved to dismiss Martinez's case on the ground that he had misrepresented his IFP eligibility by stating that he had not received money from any source within the prior twelve months, when in fact he had received more than seven thousand dollars in settlement money. Martinez filed a declaration acknowledging that he had received settlement money and stating that he sent money to his mother. In his opposition, he explained that his mother and other family members and acquaintances would deposit between $40 and $50 into his account for canteen purchases. Martinez also stated in his affidavit that he was "'taught' from various jail-house lawyers how to fill out the IFP application with 'No' to the answers for Questions number 3 & 4," the questions concerning receipt of money within the last twelve months and cash assets, along "with the required 'certified copy' of my Trust Account Statement. I was taught that when the judge examines and reviews the 'activity' in my Trust Account Statement for the prior 6-months, the judge will order me how much to pay for the filing fee and/or grant the IFP motion."

3

The magistrate judge recommended that Martinez's case be dismissed with prejudice because Martinez "misrepresented his financial situation in bad faith to obtain IFP status." The district court adopted the recommendation in full and dismissed the case with prejudice.

The existence of bad faith is a factual question that we review for clear error. *See Matter of Metz*, 820 F.2d 1495, 1497 (9th Cir. 1987) (bankruptcy). The district court did not commit clear error in concluding that Martinez misrepresented his financial situation in bad faith to obtain IFP status. Martinez's own materials—including his trust fund account statement and his later affidavit—confirm the falsity of his assertion that he had received no money from any source in the last twelve months. Martinez transferred settlement money to his family and in turn they deposited small sums back into his account. Given that Martinez had prior litigation experience, it was permissible for the district court to infer that this pattern of transactions was intended to conceal money to qualify for IFP status.

That conclusion is not changed by Martinez's explanation that he was taught by others to make false statements. The relevant questions on the IFP application are written in plain terms, not legalese, so it was reasonable for the district court to conclude that Martinez understood that he was answering falsely. And although Martinez argues that his submission of a trust fund account statement demonstrates that he was acting in good faith, that submission is required by statute. The fact

4

that the statement revealed the falsity of his IFP application is also no excuse. Martinez states that he believed the court would simply review the trust fund account statement to decide whether to grant IFP status, regardless of his false answers on the application. But the application asks about the last twelve months, while the trust fund account statement covers only six months. 28 U.S.C. § 1915(a)(2). Martinez's suggestion that he did not think he was depriving the court of required information is belied by the record.

Martinez further argues that his poverty (and his family's poverty) means that his "allegation of poverty" was not "untrue." 28 U.S.C. § 1915(e)(2)(A). A litigant's actual financial status may shed light on whether an inaccurate statement was made in bad faith. But a litigant who is unsure if she or he will qualify for IFP status may not mislead the court and, when caught, argue that the court would have granted IFP status anyway. Had he properly disclosed the money he had received, Martinez might still have qualified for IFP status. "[T]here is no formula set forth by statute, regulation, or case law to determine when someone is poor enough." *Escobedo*, 787 F.3d at 1235. But the district court justifiably found that Martinez instead made false statements in bad faith to secure IFP status—that is, that he made specific allegations of poverty that were untrue. After the district court so found, it correctly recognized that Martinez's case therefore had to be dismissed under § 1915(e)(2)(A) (providing that "the court *shall* dismiss the case" if "the

5

allegation of poverty is untrue" (emphasis added)).

Finally, it was not an abuse of discretion to dismiss Martinez's case with prejudice. Because § 1915(e)(2)(A) does not specify that dismissal shall be with or without prejudice, that decision is left to the court's discretion. *See Lopez v. Smith*, 203 F.3d 1122, 1124 (9th Cir. 2000) (en banc) (holding that "a district court retains its discretion over the terms of a dismissal" under a related provision, 28 U.S.C. § 1915(e)(2)(B), because the law "does not clearly state" whether dismissal shall be with or without leave to amend). It was within the district court's discretion to conclude that dismissal with prejudice was the appropriate sanction here.

**AFFIRMED.**